Welcome. Our fourth argument of this morning is in Appeal No. 2226-91, W. Mac Naughton v. Asher Ventures. Mr. Mac Naughton, good morning. Good morning, Your Honor. May I please the floor? The issue in this case is whether two orders that were entered in a case I'll call the Sunnyside Action are binding on this case and preclude an amendment of the complaint. So I want to go through what those orders were. There was the Holderman Order and the Finerman Decision. The Holderman Order had two parts. The first part held that I had violated New Jersey Rule of Professional Conduct 1.9 and was disqualified from representing Casco Bay in that action. On its face, the order applied in that action. I took that order up on appeal to this panel. Court said it was a housekeeping order, not an injunction. Principles of collateral estoppel do not permit the application of that aspect of the Holderman Order to this case. Why? Number one, the issues are not identical. Number two, I've never had appellate review of the merits of the Holderman Order. Number three, the law has changed. I'm quite prepared to, in this case, entertain a motion for my disqualification based on the application of Rule 1.9C because in New Jersey, it applies only if you can show a misuse of confidential information. And there has been no, ever, evidence that I have misused any confidential information in the acquisition or enforcement of the judgment. Mr. McGowan, how do you respond to the language that's in several places in our Court's prior opinion from 2019 that the way to deal with the Holderman Order is to have appealed it? That's one way to deal with the Holderman Order, absolutely, but that's not the only way to deal with the Holderman Order. What I've done in this case is I've essentially mooted the Holderman Order. I am not a party to the case. So the aspect of the Holderman Order, I'm not a party to this case, number one. Number two, Chai Harmelet is not a party to this case. Isn't this the same breed of the argument that you've pressed before multiple judges in this building without success? No. How is it different? Different parties. Different parties. Okay. In the most technical way. No. In the way that it applies for collateral estoppel. You're insisting on enforcing an order that was wrong. Nobody has come up and said, you have not said to me, Judge Holderman was right. You've avoided saying that twice. Okay? Fair enough. What? To then say for a third time, we're going to ignore. We didn't get to that issue because it was never appealed. It wasn't. It is not our practice to decide questions that are not properly before us, and if you don't appeal the Judge Holderman's Order, then why would we have any occasion or any reason to review the merits of it? I appealed it twice. I appealed it twice. I first appealed it as an interlocutory order, and that was denied on the grounds of jurisdiction. This court said, it is a housekeeping order. It is not an injunction. When you say housekeeping, what are you referring to? I'm referring to the decision from the... You're not referring to anything in our July 2019? No, no. There was an earlier decision by the court, a slip of opinion on July 27, 2016. Well, it sure looks to me, and I could probably count nearly 10 places in our 2019 order where we say, or opinion, say you never appealed the Holderman Order. You're stuck with it, like it or not. I did appeal the Holderman Order. It was rejected. The appeal was rejected. Yes. It wasn't that I didn't appeal it. I appealed it. The appeal was rejected. We say, quote, McNaughton never properly appealed the Holderman Order, end quote. Yes. Yes. You want us to revisit whether it was a proper interlocutory appeal? You do not need to do that. Right. It was an improper appeal. That's what we said. No. What you said was it was not properly appealed. You suggested it all. Your Honor. This whole case comes down to semantics for you, given the gravity of what every single district court judge that has considered this in this courthouse has said to you. This is about mincing words with us? No, Your Honor. It is not about mincing words with you. It is about getting judicial review of the application of a rule. Where do the professional disciplinary proceedings stand against you in the State Supreme Court? There was a hearing held in January by the disciplinary committee, which is a local committee. We're awaiting their report. Their report goes to the State Disciplinary Committee, and from there it goes to the New Jersey Supreme Court. Is the State Supreme Court aware of everything that's come out of this building? The State Supreme Court? The disciplinary commission? Oh, yes. Absolutely. All of the pleadings in these actions have been submitted to the disciplinary committee, and the disciplinary committee ruled that these decisions were not relevant. Why? Because it was the wrong standard. The correct standard is whether there has been a misuse of confidential information, an issue that this court has never addressed. Never addressed. You know, I mean, you want to stand on an order that was based on the LaSalle decision, which this panel reversed and overruled. If somebody were to come in here, Mr. McNaughton, and say the statute is blatantly unconstitutional and you've never addressed it. No. And we say, well, because in case one, you never properly appealed it. That argument loses eight days a week. Your Honor, I did properly appeal it. I appealed it twice. The appeal was rejected, and the reason that the appeal was rejected was because I had disobeyed the order. The sanction was I lost standing to enforce the order. When you say I properly appealed it and the U.S. Court of Appeals for the Seventh Circuit disagreed with me that it was a proper appeal? No, I said I appealed it. The court held that it was not properly appealed because... Is that binding on us, or do you want us to revisit that? That's binding on you, but it's irrelevant. It's irrelevant because the order does not apply in this case. The judge did not base her decision on that order in this case. She did not base her decision on a violation of Rule 1.9. Why is it that you think five or six federal judges have all gotten this wrong? And you're right. Yes, because the original order, the original Haldeman order, was based on an analysis under LaSalle that assumed a violation of RPC 1.9 if there is a similarity between the two cases. That is an outdated analysis, outdated. This court rejected that form of analysis in Watkins. The New Jersey Supreme Court has rejected that analysis in Troupos v. Atlantic City. So why do I come in and say they were wrong? Because the Supreme Court of the state of New Jersey says they were wrong. So that's why. Mr. McDonald, let's turn to your request before Judge Packle to amend the complaint. How do you envision amending the complaint? And talk to me about who the parties in that amended pleading would be. The new party would be Paul Foster. Who would be representing Mr. Foster? I would represent Mr. Foster. Other than representing Mr. Foster, would you have any monetary interest in any of the benefits that Mr. Foster obtains as part of this lawsuit? Yes, I would. Okay. And then who are the defendants? Sam Harmon. Okay. And can you remind me who that is? I'm sorry. Sam Harmon. Yes. Okay. So how is the fact that you, how is your use of Mr. Foster just not an end run or a way to circumvent or get around Judge Holderman's order, finding that because you have a monetary interest in the case that there's a conflict there? Because here's the way Judge Holderman addressed that. Judge Holderman said, Casco Bay may remain plaintiff in this action, but it must proceed without using any information that Mr. McDonald obtained from his prior representation of any information Mr. McDonald may have later obtained as an adversary to his former clients. Okay. I appealed that as an injunction. It was denied. I was told it was a housekeeping order. Okay. Mr. Foster derives his standing not from me, but from Casco Bay. And so what you're saying is, what you're telling this court is that in your representation, Mr. Foster, you will somehow exclude from your mind any sort of knowledge that you gained by representing the defendants. Oh, absolutely not. I'm going to, I intend to use it. I have a first amendment right to use it. It's all a matter from the public record. It's all public record information that is undisputed in the record of this case, all public record information. I'm trying to use information that I got from the public record, okay, to assist my client to collect a judgment. If I hadn't represented Shai Harmelick, let's take that out of the equation, nothing I would be doing would be improper. And yet, because Judge Haldeman said, well, you represented Shai Harmelick, you violated rule 1.9, okay? And nobody has had the time or the patience to look at that and say, you know what, maybe Judge Haldeman got it wrong. Because he did. Because if you look at the case law in this circuit, Watkins, if you look at the law in the state of New Jersey, Trupos, it is clear that what I am doing is not a violation of rule 1.9. Judge Feinerman agree with that? Judge Feinerman didn't address it. He's got a whole paragraph on 1.9. It's all dicta. And it's, Your Honor, it's dicta, and with all due respect to Judge Feinerman, he's wrong. So these orders, these orders don't mean what they say. Yes, they do. That's your argument. No, these orders mean what they say. The orders mean what they say. They say, okay, Haldeman disqualified you. We're not going to look at the merits of that. We're just going to accept that as true and apply that order rigidly down the line. And that's what's happening in this case. There comes a time when I have to say, no, wait a minute. At some point, do I not get judicial review of my contention that I am not violating rule 1.9? I'm happy to do it in this case. Let's have it. Let's go send this case back to the court, let them make their motion, let the judge create the record upon which you can make a finding of 1.9. We can look at public record information. We can look at the other information, and the judge can decide, applying the proper legal standard, the current legal standard. Mr. McNaughton, please. If you would refrain from banging on the... I'm sorry, Your Honor. Very distracting. I appreciate that, and as you can appreciate, this is an emotional issue for me. Right. But you are an attorney, yes? Yes, sir. So I take it that you can curb those emotions. Yes, sir? I'm working on it. Thank you. Oh, I will reserve the rest of my time. Very well. Mr. Haskin. May it please the court, Benjamin Haskin on behalf of the appellee, Sam Harmon. The standard of review for the issues of our appeal are an abuse of discretion. Did the district court abuse its discretion dismissing the complaint as a sanction for violation of the court orders? Did the district court abuse its discretion in refusing to grant leave to file an amended complaint that would still violate the court orders? Abuse of discretion itself has four prongs to be met, or one of which must be met to satisfy abuse of discretion. None of them are addressed by Mr. McNaughton because none of them apply. First, does the record contain evidence upon which the court could have rationally based its decision? Yes. We need to look no further than the 2019 opinion from this court, set forth the factual circumstances in which Mr. McNaughton purchased the judgment against his own client, was disqualified from court judges sanctioning, just as Judge Packle did, that was affirmed by this court. Two. Isn't the bottom line from everything that has preceded this been from multiple district court judges, beyond their frustration with Mr. McNaughton's refusal to accept court orders, that there cannot be a reassignment of the RMG judgment to any party that he is involved in representing? It doesn't matter if that party today is ABC Company, and tomorrow it's DEF, and a month from now it's XYZ, he is categorically prohibited from being involved in any representation that seeks to collect on, enforce the RMG judgment. Isn't that the upshot of every single one of those orders? Absolutely. And for a number of reasons, Your Honor. Both Mr. McNaughton individually is precluded from doing so, based upon the Holderman and Finerman order, and even if he was to attempt to remove himself, which he has yet to do, his interest has been stained, tainted for all the reasons addressed in the 2019 order. So any attempt to assign it would carry with it all those taints and stains. In effect, as you referenced, his actions, his violations of court orders, has precluded his enforcement in any manner. And his repeated appearances in the court to do so is, in our opinion, frivolous. It is putting a burden on both the court and my client. The 2019 decision by this court, you know, sets forth the factual history, but it is significant in this case because it applies to four cases. And for the purpose of consistency, I'll use the same terminology applied in the 2019 decision. So first is the Sunnyside case. And that's the case in which Judge Holderman and Finerman disqualified Mr. McNaughton from any attempt to collect the RMD judgment. But there's three other cases that are up on appeal. First, there was the attempt to reopen the RMD case to enforce. Judge Durkin relied upon the Holderman and Finerman, dismissed as a sanction. There was an attempt to collect the RMD judgment from a third party. That's the Alden case in front of Judge Blakey, who again relied upon the Holderman and Finerman and said, you cannot do so. And he went even a little further in talking about third parties and saying the prohibition against enforcing the RMD judgment did not turn on the identity of the defendant, but it's just the fact that it's being enforced. And lastly is what's known as the Palm Harbor case, which again, Judge Durkin dismissed as a sanction for violation of court orders. With all four orders being appealed to this court, this court unambiguously affirmed dismissal as a sanction. What this court stated equally applies here. All four decisions before us relied on the Holderman order to reject Mr. McNaughton's efforts to collect the RMD judgment. The judges committed no error in dismissing McNaughton's action for violating the Holderman order. The judges were well within their discretion in sanctioning Mr. McNaughton by dismissing the actions he should not have brought. Just like the first four judges were well within their discretion in dismissing the complaint as a sanction for a violation of the court order, Judge Packold was well within her discretion in taking the same action. The only inquiry needed at a minimum here is, is this case another attempt to collect the RMD judgment? And the answer is undisputably yes. In both the complaint and proposed amended complaint, Mr. McNaughton identifies his standing as a judgment creditor seeking to enforce the RMD action. It's not even disputed. The only difference between the case we're here and that in 2019 is timing, and this case was not ripe for appeal at that time based upon the posture. But by the time it got back to Judge Packold, this court had already reached its opinion or handed down its opinion, and Judge Packold simply adopted the reasoning as this court stated, found that this matter violated the order, the Holderman and Fiderman orders, and issued the same sanction that this court held was proper. As with the 2019 case, Mr. McNaughton does not argue that his actions today don't violate Holderman and Fiderman, or not today in the complaint. He does not argue that Judge Packold exceeded her inherent authority in issuing a sanction. The argument presented is that the Holderman and Fiderman order was limited to the Sunnyside case, but that simply makes no sense. It was rejected by this court. This court applied the Holderman and Fiderman order and stated that Judge Durkin and Blakey and Alden and Palm Harbor were justified in relying upon that to sanction Mr. McNaughton dismissing the complaint. Those judges promptly relied upon the Holderman order outside the Sunnyside case in sanctioning Mr. McNaughton, and the same applies here. Mr. McNaughton gets caught up in labels. He wants to talk about it's not an injunction. It is a court order. It is a binding court order, and as your honors referenced, it was never appealed. It was never or never properly appealed, but certainly never overturned. And as this court stated, regardless of whether Mr. McNaughton agreed with the Holderman order, he had to follow it unless and until it was undone through proper channels, such as reconsideration by the district judges or by us. It did not occur in 2019. It did not occur today, and the same result is warranted, and that is dismissal as a sanction for violation of those court orders. Turning quickly to leave to amend, as referenced, the amended complaint does not cure the deficiencies. Substituting Mr. Foster does no good for the reasons discussed. He's still enforcing the RMG judgment, and having to go just against a police Sam Harmalech, similarly irrelevant. It's collecting the RMG judgment that Judge Blakey already stated cannot do indirectly what he cannot do directly. Certainly Judge Packold was within her discretion in denying leave to amend. Anything else you want to add, Mr. Haskin? I think we understand your position. The only last issue I'd like to raise briefly, Judge, is we did file a motion for damages under Rule 38 of the appellate procedure. That's not done lightly, but we do believe the circumstances warranted here. Frankly, the arguments raised by Mr. McNaughton are done in an alternative reality. He filed a response late last night, the premise of being that this 2019 decision was based upon his lack of standing and not reliance on the Holderman order. That's just not true. The court directly stated the judges may have had other reasons such as standing to dismiss. They don't use standing. The language is other reasons. But they were justified in relying upon the Holderman decision itself. And lastly, we think damages under 38 and attorney fees would be the damages needed for deterrence. Judge Blakey, in his dismissal, said no sanction, sort of dismissal, would deter Mr. McNaughton from continued attempt to skirt the prior disqualification ruling. Unfortunately, I think Judge Blakey underestimated Mr. McNaughton's resolve. Not only is he continuing to prosecute this case, notwithstanding all the rulings from the district court judges and this court, there is a sixth case pending in the district court, which is a filing of the proposed amendment complaint. One often just filed that as a new cause of action. Has that been assigned to your knowledge to a district court judge yet? Yes, it was initially assigned to Judge Norgal. After some briefing, it got reassigned to Judge Packold. There have been motions to dismiss and motions to sanctions. That's pending. But short of rule 38 damages, we'll be back here, Judge, and we'll be arguing this case for a third time. Nothing further or any questions by this court, I'll conclude. Thank you, Mr. Haskin. Thank you. Mr. McNaughton, anything else you need to add? The rules of collateral estoppel apply. You can't just summarily say, expand the scope of Judge Feineman's order or the scope of Judge Haldeman's order based on the language of the orders themselves. There's a process by which orders in one case are applied to another. They're injunctions or it's collateral estoppel. Neither have applied in this case. You're trying to get the same result by going around and rewriting what the original orders were. The Packold case, the second Packold case was filed when I originally moved to amend this case. The statute of limitations on the claim was coming up for expiration, and I had not gotten a decision from the court. So rather than base it on the amended of the complaint, I filed a new action to foreclose the statute of limitations issue if we got that far. Certainly if you vote against me on this appeal, I have no basis to proceed further with that case and I'll withdraw it. But I have a good faith reason to make my case. Under New Jersey law, under the law of this circuit, I have not violated Rule 1.9. Thank you. Okay. We'll take the appeal under advisement with thanks to both parties. We'll move on to our next.